Charles H. RUBY, as President of the Air Line Pilots Association, International, and the Air Line Pilots Association, International, an unincorporated association, Neil H. Prothers, James B. Mac Quarrie, M. E. Tusha, W. H. Benefield, D. E. Dale, S. M. Isbell, Edward A. Cywinski, Robert L. Bragg and Curt Wetzel, individually and on behalf of that class of pilots serving as third crew members similarly situated which they represent, Plaintiffs,

v.

PAN AMERICAN WORLD AIRWAYS, INC.,

and

Paul Chorbajian, as President of the Flight Engineers' International Association, PAA Chapter and the Flight Engineers' International Association, PAA Chapter, an unincorporated association, Defendants.

No. 65 Civ. 2870.

United States District Court
S. D. New York.

Dec. 20, 1965.

Cohen & Weiss, New York City, for plaintiffs; Henry Weiss, Herbert A. Levy and Robert S. Savelson, New York City, of counsel.

Poletti, Freidin, Prashker, Feldman & Gartner, New York City, for defendant Pan American World Airways, Inc.; Jesse Freidin, Murray Gartner and Matthew J. Flood, New York City, of counsel.

Daniel Kornblum and O'Donnell & Schwartz, New York City, for defendants FEIA, PAA Chapter; Asher W. Schwartz, Daniel Kornblum, and Michael Klein, New York City, of counsel.

PALMIERI, District Judge.

This is a motion for a preliminary injunction in which the plaintiffs [1] seek to restrain the defendants from requiring certain third crew members in Pan American World Airways, Inc. (Pan American) cockpits to pay dues to the Flight Engineers' International Association, PAA Chapter (FEIA) or be discharged.

### Preliminary Statement

This dispute, like so many others which have affected the airlines industry in recent years, revolves about the widely publicized crew complement problem. See e. g., Ruby v. American Airlines, Inc., 329 F.2d 11 (2d Cir. 1964); Flight Engineers' Int'l Ass'n v. Eastern Air Lines, Inc., 311 F.2d 745, 746 (2d Cir. 1963); Pan American World Airways, Inc. v. Flight Engineers' Int'l Ass'n, 306 F.2d 840 (2d Cir. 1962).

The controversy here has its origin in the fact that FEIA and ALPA have separate crew complement agreements with Pan American which deal, in part, with the third crew member position.

FEIA also has an agency shop agreement with Pan American which has been in effect for many years. The question which has given rise to this litigation is whether certain pilots who are assigned to the third crew member position are subject to FEIA's agency shop agreement. The answer to this question hinges upon the interpretation of the various crew complement agreements.

The FEIA crew complement agreement, which was entered into on May 13,

---

1. In the interests of brevity, the plaintiffs will be referred to hereinafter simply as ALPA (Air Line Pilots Association, International).

1963, provides in Section XV, which is the Section involved here:

A Pilot who is a member of the Air Line Pilots Association International and is assigned a third crew member position * * * shall not be considered covered by the Pan American-FEIA Chapter Agency Shop Agreement. * * *

ALPA, on the other hand, has entered into four separate written agreements with Pan American, all of which have provisions relating to the third crew member position. The first was adopted in September, 1962; the second in April, 1963; the third in December, 1963; the fourth in April, 1965. The difficulties of the parties are compounded by the fact that there is a dispute as to which language is the effective language. The pertinent provisions of the ALPA-Pan American instruments and the contentions of the parties with respect thereto are discussed hereafter.

About one year ago, FEIA raised a question as to the meaning of Section XV (quoted above) of its agreement with Pan American. Under an arbitration clause, the interpretation of Section XV was submitted to Professor Nathan P. Feinsinger.[2] In an award dated July 7, 1965, Professor Feinsinger ruled that under FEIA's contract with Pan American all newly employed personnel assigned subsequent to May 13, 1965, to Flight Engineer status (new hires) are subject to FEIA's agency shop.[3] The precise wording of the arbitration award was:

(1) Any occupant of a Flight Engineer position, including the so-called "Third Crew Member" position, in the employ of the Company since the date of the execution of the said Crew Complement Agreement and who at the time of his assignment to such position was not a full-fledged, dues paying member of ALPA, shall be considered covered by the PAA Chapter's Agency Shop Memorandum of Understanding with the Company dated May 13, 1963, and commencing with the date of this Award, shall be required to pay or tender to the PAA Chapter such dues and assessments as are uniformly required of members of the PAA Chapter under said Agency Shop Agreement, and in accordance with its terms; * * *.

This arbitration award in FEIA's favor was not what Pan American had sought or, apparently, anticipated. Nor was the award to the liking of ALPA which maintains that under its agreement with Pan American all pilots serving as third crew members and including the new hires are exempted from FEIA's agency shop.

Under FEIA's contract with Pan American, any employee who is covered by the agency shop memorandum, but who does not pay his dues, is subject to discharge. The procedure followed is that FEIA sends to each delinquent individual a 15-day notice which says, in substance: "You are delinquent in the payment of your dues and if you do not pay them within the ensuing 15 days, you are subject to discharge." If within the ensuing 15 days the dues have not been paid by the delinquent individual, the contract further provides that FEIA

2. Professor Feinsinger headed the Presidential Commission, appointed in 1961, which investigated and reported on the crew complement issue. See Ruby v. American Airlines, Inc., 227 F.Supp. 674, 678 (S.D.N.Y.1963). He is the standing arbitrator under the FEIA-Pan American agreement.

3. It should be noted that ALPA was invited to be present and heard at the arbitration meetings but declined to accept the invitation. It should also be noted that Professor Feinsinger stated in his opinion that the Pan American pilots are not bound by his award. (P. 2.) FEIA has moved, in the New York Supreme Court, to confirm the Feinsinger award. Pan American has moved, in turn, to dismiss because of failure to join necessary parties or, in the alternative, for an order requiring the joinder of the affected third crew members and ALPA. That motion was argued on October 29, 1965, and is now awaiting decision.

then will notify Pan American that the individual has not paid his dues and Pan American is thereupon obliged to send to the individual a notice "that you will be discharged unless you file a grievance".

After FEIA received the favorable arbitration award, ALPA instituted this action seeking, in substance, an order enjoining FEIA and Pan American from acting under the arbitration award to discharge men who ALPA felt were exempted from FEIA's agency shop by virtue of ALPA's own contract with Pan American. The complaint also seeks a judgment declaring the rights of the parties.

The parties arrived in court in a state of emergency because FEIA had, in fact, sent out the above-described 15-day notices to the men in question. At oral argument of the motion, however, a stipulation was agreed upon by the parties which served to remove any urgency from the proceedings. That stipulation provides as follows:

> * * * Pending the disposition by this Court of the motion for preliminary injunction before it now, and during the period of 15 days following said disposition, FEIA will not request discharge of any flight engineers and will accept, if tendered, the delayed tender of dues.

> FEIA agrees that it will send notice of this stipulation to each flight engineer confirming the understanding reached in court and that eventually it will advise them, with all convenient speed, of the disposition of this Court. Pan American is advised of these undertakings, has no objection to and acquiesces in them.

The parties then submitted affidavits and memoranda and proposed findings of fact and conclusions of law. What follows is designed to demonstrate that this Court has no jurisdiction to grant the relief sought.

ALPA has argued that it is entitled to injunctive relief because an implementation of the Feinsinger award would constitute a unilateral change in the working conditions of those men covered by its contract in violation of Section 2, Seventh and Section 6 of the Railway Labor Act. 45 U.S.C. §§ 152, Seventh, 156. It also contends that a discharge of any pilot serving as a third crew member would constitute unlawful influence, interference, and coercion with respect to the right of such pilots to a voluntary choice in union affiliation in violation of Section 2, First, Third, Fourth, Seventh, and Eleventh of the Railway Labor Act. 45 U.S.C. § 152, First, Third, Fourth, Seventh, and Eleventh.

To reach its conclusion, ALPA argues that an agreement reached with Pan American in 1965 in effect reinstated language adopted in 1962 by the parties. In this way ALPA avoids the two 1963 agreements with Pan American which would otherwise cause it difficulty. Thus, the language ALPA seeks to rely on, and which is identical in the 1962 and 1965 agreements, is as follows:

2(b) All third crew member positions on three-man jet crews which are not filled in accordance with 2(a) above shall be filled by pilots now or hereafter employed by the Company and on the pilots' system seniority list and shall be qualified in accordance with Section 1(c) 1(d).

3 Third Crew Members on Propeller Aircraft. All third crew member positions on propeller aircraft which are not filled by flight engineers in the active employ of the Company on May 21, 1962 shall be filled by pilots now or hereafter employed by the Company and on the pilots' system seniority list.

7(b) A pilot who is assigned a third crew member position under 2(b) or 3 above shall not be considered covered by the Agency Shop provisions of the FEIA PAA Chapter Agreement. He shall retain his right to process a grievance involving discipline or discharge

in accordance with Sections 22 and 23 of the Pilots' Employment Agreement and shall retain his right to participate in the Co-operative Retirement Income Trust Plan for pilots.

ALPA contends that the language clearly exempts the new hires.

Pan American and FEIA, on the other hand, argue that the two agreements adopted by Pan American and ALPA in 1963 remain in effect, even though they were not specifically included in the 1965 agreement. The 1963 language in question was allegedly adopted to conform ALPA's contract to FEIA's and, it is urged, such is still the intent and effect of the contracts. Pan American says, furthermore, that the omission of the April 30, 1963 language from the 1965 agreement was a mere clerical error.

The first of the two 1963 agreements was adopted on April 30, 1963. It amended Section 7(b) (quoted above) to read as follows:

A pilot *member of the Air Line Pilots Association, International* who is assigned a third crew member position \* \* \* shall not be considered covered by the Agency Shop provisions of the Flight Engineers' International Association-PAA Chapter Agreement. \* \* \* (Italics indicates added language.)

The second 1963 agreement was adopted on December 10, 1963. It provided in relevant part:

Pilots assigned to third crew member vacancies \* \* \* shall, while serving in such position, be covered by the Agreement between the Company and the FEIA with respect to Flight Engineers, except as specifically provided in Section XV of the Memorandum of Agreement regarding Crew Complement, dated May 13, 1963, between PAA and FEIA. \* \* \*

Pan American and FEIA contend that this language is still effective because it was not covered by the Section 6 notices and discussions which led to the 1965 revisions. Pan American contends further that the 1963 language requires interpretation and, therefore, falls within the exclusive jurisdiction of the System Board of Adjustment. It further argues that even if only the 1965 agreement is effective, that too requires interpretation and falls outside this Court's jurisdiction.

Thus it can be seen that there are two central issues involved in this case. The first is what language is currently effective between ALPA and Pan American. See Findings of Fact Nos. 10–13, 16–17, infra. This question is one for the Court to decide. Manning v. American Airlines, 329 F.2d 32, 34 (2d Cir. 1964). The second is what does that language mean. Since it is the opinion of this Court that the effective language —whatever it may be—requires interpretation, this second question is one for the System Board of Adjustment. See Conclusions of Law Nos. 3, 4, 6, infra. Thus, no matter what language is in effect, the injunction must be denied, although a residual judicial function—that of determining the effective contract language—still remains. As a result, the Court need not now determine what the effective language is, but that question should await further proceedings. Only after the appropriate language shall have been determined by the Court and thereafter interpreted by the System Board of Adjustment might there be presented the question of whether a unilateral change in working conditions is proposed in violation of the Railway Labor Act. That question may never be reached, and hence should not be discussed at this juncture.

*Findings of fact*

1. Plaintiffs have brought this action for an injunction, declaratory judgment, and other and further relief under the Railway Labor Act, 45 U.S.C. §§ 151 et seq.

2. Plaintiff Charles H. Ruby is President of the Air Line Pilots Association, International. Plaintiff ALPA is an unincorporated association organized for the purposes and objectives of a labor

organization and is a "representative", as that term is defined and used in Section 1, Sixth of the Railway Labor Act, 45 U.S.C. § 151, Sixth.

3. Plaintiffs Prothers, MacQuarrie, Tusha, Benefield, Dale, Isbell, Cywinski, Bragg and Wetzel are pilots serving as third crew members in the employ of Pan American World Airways, Inc.

4. Defendant Pan American World Airways, Inc. is a corporation residing and doing business within the judicial district of the Southern District of New York.

5. Defendant Pan American is now and at all times material to this action has been engaged in the business of providing air transportation service in interstate and foreign commerce, pursuant to certificates of public convenience and necessity issued by the Civil Aeronautics Board under the Federal Aviation Act of 1958, 49 U.S.C. §§ 1301 et seq. Pan American is a "common carrier by air engaged in interstate or foreign commerce," as defined and used in Section 201 of the Railway Labor Act, 45 U.S.C. § 181, and is subject to the provisions of the Act.

6. Defendant Paul Chorbajian is the President of the Flight Engineers' International Association, PAA Chapter. Defendant Chorbajian resides in the State of New York.

7. Defendant FEIA is an unincorporated association and labor organization with its offices at 1913 Deer Park Avenue, Deer Park, L. I., N. Y., and resides in the State of New York.

8. On July 1, 1962, ALPA and Pan American entered into a Collective Bargaining Agreement governing the rates of pay, rules and working conditions of pilots in the employ of Pan American. Section 43 of said Agreement provided that it "shall continue in full force and effect until December 31, 1963 and thereafter, unless written notice of intended change is served at least sixty days in advance of December 31, 1963, or any date thereafter, in accordance with Section 6, Title I of the Railway Labor Act, as amended."

9. On September 7, 1962, ALPA and Pan American entered into a memorandum of agreement to govern the composition of the flight crews of certain aircraft operated by Pan American, the qualifications and duties of such flight crew members on such aircraft and related matters regarding the flight crew members on such aircraft. Said agreement is hereinafter referred to as the "1962 agreement".

10. Section 2(b) of the 1962 agreement provided:

All third crew member positions on three-man jet crews which are not filled in accordance with 2(a) above [by flight engineers] shall be filled by pilots now or hereafter employed by the Company and on the pilots' system seniority list and shall be qualified in accordance with Section 1(c) and 1(d).

11. Section 3 of the 1962 agreement provided:

All third crew member positions on propeller aircraft which are not filled by flight engineers in the active employ of the Company on May 21, 1962 shall be filled by pilots now or hereafter employed by the Company and on the pilots' system seniority list.

12. Section 7(b) of the 1962 agreement provided: "A pilot who is assigned a third crew member position under 2(b) or 3 above shall not be considered covered by the Agency Shop provisions of the FEIA PAA Chapter Agreement."

13. On April 30, 1963, Pan American and ALPA amended the language of Section 7(b) of the 1962 agreement. Section 7(b), as amended, read in relevant part: "A pilot member of the Air Line Pilots Association, International who is assigned a third crew member position under 2(b) or 3 above shall not be considered covered by the Agency Shop provisions of the Flight Engineers' International Association PAA Chapter Agreement. * * *"

14. On May 13, 1963, Pan American and FEIA entered into a collective bar-

gaining agreement and memorandum of agreement regarding crew complement.

15. ALPA was not and is not a party to any collective bargaining agreement or crew complement agreement entered into by Pan American with FEIA.

16. On December 10, 1963, Pan American and ALPA entered into a "Supplemental Agreement" to specify the means by which recalled pilots and new hire pilots would bid for third crew member vacancies and pilot duty positions. Said Supplemental Agreement provided that it "shall run concurrently with the Pilots' Employment Agreement dated July 1, 1962." It also specifically referred to Section XV of the FEIA-Pan American Crew Complement Agreement of May 13, 1963.

17. In April, 1965, Pan American and ALPA entered into an agreement the effect of which is in dispute. See Preliminary Statement supra at pp. 10–12.

18. There is currently in effect between Pan American and FEIA an Agency Shop Agreement which has been effective since November 2, 1953 (except for paragraph 10, which was added on May 13, 1963), under which "Each Engineer subject to the provisions of the collective bargaining Agreement between * * * [FEIA] and [Pan American] shall, as a condition of continued employment as an Engineer, pay or tender to the Association such dues and assessments as are uniformly required of members of the Association. * * *"

19. There is currently in effect between FEIA and Pan American an FEIA Crew Complement Agreement which, among other things, provides, in Section XV, that:

A Pilot who is a member of the Air Line Pilots Association, International and is assigned a third crew member position * * * shall not be considered covered by the Pan American-FEIA/PAA Chapter Agency Shop Agreement. * * *

and, in Section XVII, provides for arbitration of any dispute about the interpretation or application of the Crew Complement Agreement.

20. About one year ago, a question as to whether new hires were within the meaning of Section XV of the FEIA Crew Complement Agreement as "Pilot[s] who * * * [are] member[s] of the Air Line Pilots Association, International and * * * [are] assigned a third crew member position * * *" and thus exempt from the Agency Shop Agreement was submitted by FEIA and Pan American to the impartial arbitrator named by the said Agreement, Professor N. P. Feinsinger. The arbitrator's award, dated July 7, 1965, determined that:

Any occupant of a Flight Engineer position, including the so-called "Third Crew Member" position * * * and who at the time of his assignment to such position was not a full-fledged, dues paying member of ALPA, shall be considered covered by the PAA Chapter's [FEIA's] Agency Shop Memorandum of Understanding with the Company dated May 13, 1963. * * *

21. ALPA and Pan American pilots were invited to be heard at the aforesaid arbitration hearings, but did not accept the invitation.

22. Following the said award, FEIA took steps to require compliance with its Agency Shop Agreement by the affected third crew members, and on September 16, 1965, petitioned the New York Supreme Court, New York County, for an order confirming the said arbitration award.

23. In the New York Supreme Court proceeding, respondent Pan American moved to dismiss the petition for confirmation of the award for failure to join as necessary parties the third crew members affected by the award, or in the alternative to require the joinder of the affected third crew members and ALPA. The said motion is now awaiting decision having been argued on October 29, 1965.

24. On or about August 16, 1965, FEIA sent letters to pilots serving as

third crew members referring to the Feinsinger arbitration award and stating that said pilots were obligated to pay dues to FEIA, and further stating:

> You have previously been apprised that the penalty for non payment of dues is severe, and I would recommend that you remit the correct amount promptly since there will be no time extensions on the implementation of the Agency Shop provisions of our contract.

25. On or about September 23, 1965, FEIA mailed "15 day notices" to pilots serving as third crew members who had not paid dues to FEIA, informing such pilots that they were required to pay or tender dues to FEIA "within 15 days of the receipt of this notice or be subject to discharge." FEIA sent a copy of each such letter to Pan American.

26. The agency shop agreement between Pan American and FEIA provides that any person to whom such agreement is held applicable, who has not paid dues to FEIA within 15 days after receiving a notice such as that sent by FEIA to the pilots serving as third crew members, must be discharged by Pan American upon the written demand of FEIA. Said agency shop agreement does not provide for any later opportunity for an employee to whom such agreement is held applicable to make the payment under any circumstances.

27. The parties entered into a stipulation at the oral argument of the motion designed to alleviate the urgency of the proceedings. See Preliminary Statement supra at pp. 8–9.

### Conclusions of Law

1. This Court has jurisdiction over the parties and the subject matter under the Railway Labor Act, as amended, 45 U.S.C. § 151 et seq., except to the extent hereinafter indicated.

■ 2. A "minor dispute" is a dispute involving the interpretation and application of an existing agreement. A "major dispute" is a dispute involving the formation or alteration of an agreement. E. g., Elgin, J. & E. Ry. v. Burley, 325 U.S. 711, 727, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945); Westchester Lodge 2186, Bhd. of Ry. & S. S. Clerks v. Railway Express Agency, 329 F.2d 748, 752 (2d Cir. 1964); 45 U.S.C. §§ 153, 184.

■ 3. ALPA contends that the provisions contained in its Crew Complement Agreement excluding certain third crew members from the FEIA Agency Shop Agreement have a different meaning from Section XV of the FEIA Crew Complement Agreement. This contention requires an interpretation of ALPA's agreement and is, therefore, a "minor dispute". This Court has no jurisdiction since exclusive jurisdiction of the interpretation of agreements under the Railway Labor Act is vested in System Boards of Adjustment. E. g., Brotherhood of Locomotive Engineers v. Louisville & N. R. R., 373 U.S. 33, 83 S.Ct. 1059, 10 L.Ed.2d 172 (1963); Brotherhood of R. R. Trainmen v. Chicago R. & I. R. R., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957); Slocum v. Delaware L. & W. R. R., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1950); Order of Ry. Conductors v. Pitney, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318 (1946); 45 U.S.C. §§ 153, 184.

4. Plaintiffs have not exhausted their remedies under the grievance and arbitration procedures of the ALPA-Pan American agreement. 45 U.S.C. § 153 First (i).

■ 5. In cases involving minor disputes, such as is presented in the instant proceeding, the Court may issue an injunction only for the purpose of preserving the jurisdiction of the Adjustment Board. Manion v. Kansas City Terminal Ry., 353 U.S. 927, 77 S.Ct. 706, 1 L.Ed.2d 722 (1957); Westchester Lodge 2186, Bhd. of Ry. & S. S. Clerks v. Railway Express Agency, 329 F.2d 748 (2d Cir. 1964).

6. The instant case involves the interpretation of an existing working agreement over which this Court has no jurisdiction because such function is vested exclusively in the Adjustment Board machinery provided for by the agreement of the parties in accordance

with the Railway Labor Act. See citations in Conclusion No. 3, supra. Rutland Ry. v. Brotherhood of Locomotive Engineers, 307 F.2d 21 (2d Cir. 1962), cert. denied, 372 U.S. 954, 83 S.Ct. 949, 9 L.Ed.2d 978 (1963). Westchester Lodge 2186, Bhd. of Ry. & S. S. Clerks v. Railway Express Agency, 329 F.2d 748 (2d Cir. 1964).

7. Since plaintiffs do not show any violation of their statutory rights under the Railway Labor Act, the Norris-La-Guardia Act denies jurisdiction to this Court to issue an injunction. Westchester Lodge 2186, Bhd. of Ry. & S. S. Clerks v. Railway Express Agency, 329 F.2d 748, 753 (2d Cir. 1964).

8. The resolution of the dispute with respect to the contractual language now in effect between ALPA and Pan American is ultimately for the Court but is not here presented as a justiciable issue. Manning v. American Airlines, Inc., 329 F.2d 32, 34 (2d Cir. 1964). Cf. Order of Ry. Conductors & Brakemen v. Switchmen's Union of North America, 269 F.2d 726, 729 (5th Cir. 1959).

9. Plaintiffs' motion for a preliminary injunction is denied.

It is so ordered.