**RAILWAY LABOR EXECUTIVES'
ASSOCIATION, et al., Plaintiffs,**

v.

**METRO–NORTH COMMUTER
RAILROAD COMPANY,**
Defendant.

**No. 86 Civ. 6066 (RLC).**

United States District Court,
S.D. New York.

Sept. 26, 1990.

Alper & Mann (Lawrence M. Mann, Peter M.J. Reilly, of counsel), Washington, D.C., for plaintiffs.

Eikenberry Futterman & Schoolman (Richard Schoolman, of counsel), C. Sue Barnett, New York City, for defendant.

## OPINION

ROBERT L. CARTER, District Judge.

■ The facts of this case are fully set out in the court's earlier opinion, reported as *Railway Labor Executives' Association v. Port Authority Trans–Hudson Corp.*, 695 F.Supp. 124 (S.D.N.Y.1988) (Carter, J.), with which familiarity is assumed. In that opinion, the court found that the decision by Metro–North Commuter Railroad Company ("Metro–North") to require urinalysis drug screening at its employees' periodic and return-to-duty physical examinations gave rise to a "major dispute" under the Railway Labor Act ("RLA"). 45 U.S.C. §§ 151–188.[1] Consequently, the court enjoined Metro–North from requiring such testing prior to exhausting the notice, negotiation and mediation procedures of the RLA. 45 U.S.C. § 156. Metro–North now moves for an order vacating the injunction based on subsequent changes in decisional law. In particular, Metro–North contends that *Consolidated Rail Corp. v. Railway Labor Executives' Association*, 491 U.S. 299, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989) ("*Conrail*"), establishes that the dispute between the parties is a "minor dispute" within the exclusive jurisdiction of an RLA adjustment board. 45 U.S.C. § 153. The

---

1. Under the RLA, "major disputes seek to create contractual rights, minor disputes to enforce them." *Consolidated Rail Corp. v. Railway Labor Executives' Ass'n*, 491 U.S. 299, 302, 109 S.Ct. 2477, 2480, 105 L.Ed.2d 250 (1989). A dispute over a change in working conditions is "minor" if the employer's position is "arguably justified" by the terms of the collective-bargaining agreement; otherwise, it is "major." *Id.* at 310, 109 S.Ct. at 2484. "Minor disputes" are resolved by compulsory arbitration before the National Railroad Adjustment Board or before a special board of adjustment established by agreement. 45 U.S.C. § 153 First (i), Second. The parties to a minor dispute are under no obligation to maintain the status quo pending arbitration, and federal subject-matter jurisdiction does not extend to the merits of the dispute. *See Railway Labor Exec. Ass'n, supra*, 695 F.Supp. at 129. In a "major dispute," on the other hand, a party may *not* introduce a disputed practice prior to exhausting the notice, negotiation and mediation procedures set forth in the RLA, 45 U.S.C. § 156, and either party may obtain a federal court order enjoining the other's violation of the RLA's status-quo requirement. *See id.* at 129.

plaintiffs, on the other hand, argue that the injunction is res judicata and not subject to reconsideration. Alternatively, they seek an injunction compelling arbitration and forbidding implementation of the drug-testing program pending a decision by the adjustment board.

■ Plaintiffs' contention that this court's earlier ruling is res judicata is incorrect. "Under res judicata, a final judgment on the merits precludes the parties ... from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). The court has not entered a final judgment in this case. Even assuming, however, that the injunction in this case has the effect of a "final judgment on the merits," Rule 60(b)(5), F.R.Civ.P., explicitly authorizes the court on motion to relieve such a judgment of its prospective effect. Rule 60(b)(5) states that "the court may relieve a party ... from a final judgment, order, or proceeding" if "it is no longer equitable that the judgment should have prospective application."

■ Regardless of how Metro–North's motion is characterized, consideration of the motion is not subject to res judicata but at most is guided by the more flexible principle of law of the case. *See Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1355 (7th Cir.1990) (whether an order that is not final may be vacated is a question of the law of the case); *Cox v. Wyrick*, 873 F.2d 200, 202 (8th Cir.) (law of the case is applicable to Rule 60(b) proceeding), *cert. denied,* —— U.S. ——, 110 S.Ct. 105, 107 L.Ed.2d 68 (1989); *Ritter v. Smith*, 811 F.2d 1398, 1404 (11th Cir.) (motion to vacate judgment implicates law of the case, not res judicata), *cert. denied,* 483 U.S. 1010, 107 S.Ct. 3242, 97 L.Ed.2d 747 (1987); *cf. Toussaint v. McCarthy*, 801 F.2d 1080, 1090, 1092 & n. 11 (9th Cir.1986) (discussing law of the case on motion to modify injunction), *cert. denied,* 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987). The doctrine of the law of the case "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983). As applied to a court's own earlier rulings, the doctrine is discretionary and does not deprive the court of power to reconsider those rulings. *Id.* at 618, 103 S.Ct. at 1391. Rather, "a clear conviction of error on a point of law ... will prevail over 'the law of the case.'" *Zdanok v. Glidden Co.*, 327 F.2d 944, 952–53 (2d Cir.), *cert. denied,* 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964); *see Toussaint, supra,* 801 F.2d at 1092 n. 11.

■ To be sure, a motion to modify or dissolve an injunction is not a substitute for a timely appeal from the order of the court. *Schildhaus v. Moe*, 335 F.2d 529, 530 (2d Cir.1964); *see United States v. Swift & Co.*, 286 U.S. 106, 119, 52 S.Ct. 460, 464, 76 L.Ed. 999 (1932). A continuing injunction, however, whether preliminary or permanent, is always subject to modification for a change in circumstances. *See, e.g., System Fed'n No. 91, Ry. Employes' Dep't v. Wright*, 364 U.S. 642, 650–51, 81 S.Ct. 368, 372–73, 5 L.Ed.2d 349 (1961). Metro–North does not merely seek to subject the injunction "to impeachment in its application to the conditions that existed at its making," *Swift, supra,* 286 U.S. at 119, 52 S.Ct. at 464, but alleges that subsequent developments have removed the basis for the prospective application of the injunction.

■ A subsequent change in decisional law is an appropriate basis for dissolving a continuing injunction. *Toussaint v. McCarthy*, 801 F.2d 1080, 1090–91 (9th Cir. 1986); *Nelson v. Collins*, 659 F.2d 420, 424 (4th Cir.1981); *Elgin Nat. Watch Co. v. Barrett*, 213 F.2d 776, 780 (5th Cir.1954); *Coca-Cola Co. v. Standard Bottling Co.*, 138 F.2d 788 (10th Cir.1943); *see also Pasadena City Bd. of Educ. v. Spangler*, 427 U.S. 424, 437–38, 96 S.Ct. 2697, 2705, 49 L.Ed.2d 599 (1976) (ambiguity of decree together with change in decisional law requires modification); *System Fed'n, supra,* 364 U.S. at 650 n. 6, 81 S.Ct. at 372 n. 6 (noting that "many cases" have held a

mere change in decisional law sufficient). In general, " '[w]hen a change in the law authorizes what had previously been forbidden[,] it is abuse of discretion for a court to refuse to modify an injunction founded on the superseded law.' " *Toussaint, supra,* 801 F.2d at 1090 (quoting *American Horse Protection Ass'n v. Watt,* 694 F.2d 1310, 1316 (D.C.Cir.1982)).

This case involves no special factors that would warrant departure from this rule. The defendant does not ask the court to undo the past effects of the injunction, but only to relieve it from the injunction's prospective effects. Unlike, for example, a decree quieting title to land, the injunction in this case "involve[s] the supervision of changing conduct or conditions" as opposed to "protection [of] rights fully accrued upon facts ... substantially impervious to change." *United States v. Swift & Co.,* 286 U.S. 106, 114, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932); *see Toussaint, supra,* 801 F.2d at 1090–91; *Coca–Cola, supra,* 138 F.2d at 790. Thus, the plaintiffs' interest in finality is weak. The only harm that the plaintiffs will suffer if the court dissolves the injunction is that they will be subject to the drug-testing requirement itself, which the defendant contends may no longer be enjoined. The plaintiffs do not allege that the motion is untimely, nor have they pointed to any other factors that would make the requested relief inequitable. Thus, if Metro–North has established that changes in decisional law have removed the legal basis for the prospective application of the injunction, the injunction must be dissolved.

 Metro–North cites *Conrail, supra,* as a controlling change in decisional law.[2] Conrail, the railroad in that case, had added drug screening to the urine tests routinely performed at its employees' periodic and return-from-leave physical examinations. The United States Supreme Court found that the dispute arising from the addition of the drug-testing component to the physical examinations was "minor" under the Railway Labor Act because the carrier's position was "arguably justified" under the collective-bargaining agreement. 491 U.S. at 312, 109 S.Ct. at 2479. Although the agreement contained no express terms authorizing physical examinations, Conrail's authority to conduct the examinations was established by past practice. *Id.* at 312, 109 S.Ct. at 2485.

The relevant circumstances of this case are virtually identical to those in *Conrail.* The plaintiffs attempt to distinguish *Conrail* by arguing that the physical examinations in that case "routinely" included urinalysis, and that a similar showing in the present case "is foreclosed by the prior judicial finding" that Metro–North's position had "no arguable justification." Pl. Mem.Opp. at 10–11. On the contrary, however, the court has already found that urine and blood specimens had "routinely" been required at Metro–North's physical examinations since 1983. *Railway Labor Exec. Ass'n, supra,* 695 F.Supp. at 127; *see also* Herrlin Aff. ¶ 5. The plaintiffs do not point to any other factors that might distinguish this case from *Conrail.* Indeed, Metro–North's position is even stronger than Conrail's, since Metro–North's collective-bargaining agreements specifically authorize medical examinations. Burney Aff. ¶ 6. Accordingly, the *Conrail* decision compels the court to conclude that Metro–North's position is "arguably justified" and that the dispute is "minor."[3]

---

**2.** It is also worth noting that all of the three principal cases that this court cited in support of its earlier conclusion that the dispute was "major" have subsequently been reversed or vacated. *Railway Labor Executives' Ass'n v. Consolidated Rail Corp.,* 845 F.2d 1187 (3d Cir.1988), *rev'd,* 491 U.S. 299, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989); *International Bhd. of Teamsters v. Southwest Airlines Co.,* 842 F.2d 794 (5th Cir. 1988), *contrary result reached on reh'g en banc,* 875 F.2d 1129 (5th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 838, 107 L.Ed.2d 834 (1990); *Brotherhood of Locomotive Engineers v. Burling-*

*ton N.R. Co.,* 838 F.2d 1087 (9th Cir.1988), *vacated per curiam,* 492 U.S. 901, 109 S.Ct. 3207, 106 L.Ed.2d 558 (1989).

**3.** This court recently decided a case involving a Metro–North employee who had been "taken out of service" for testing positive for drugs on a urine test before Metro–North's drug-testing program was enjoined. *Dingwall v. Metro–North Commuter R.R.,* 135 L.R.R.M. (BNA) 2314, 2315 (S.D.N.Y. August 30, 1990) (Mukasey, J.). In the *Dingwall* case, the court found that "[t]he drug testing rule at issue in *Consolidated*

The merits of the dispute are thus within the exclusive jurisdiction of an adjustment board under 45 U.S.C. § 153. *See Conrail, supra,* 491 U.S. at 304, 109 S.Ct. at 2481. The court, therefore, does not decide whether Metro–North's interpretation of the contract is correct, only that it is "arguably justified," as that phrase is used in *Conrail. See CSX Transp., Inc. v. United Transp. Union,* 879 F.2d 990, 1003 (2d Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 720, 107 L.Ed.2d 740 (1990).

The plaintiffs further argue that, even if the dispute is minor, the court may enjoin Metro–North from implementing drug testing pending arbitration. Ordinarily, a carrier in a "minor dispute" may "act on its own interpretation [of the collective-bargaining agreement] pending arbitration." *CSX Transp., supra,* 879 F.2d at 997. An injunction pending arbitration "is appropriate only in those instances when it appears that its absence would prevent the Adjustment Board from giving a significant remedy to the side that prevails before the Board." *Local 553, Transport Workers Union v. Eastern Air Lines,* 695 F.2d 668, 675 (2d Cir.1982). The sole purpose of a minor-dispute injunction is to preserve the jurisdiction of the adjustment board. *Westchester Lodge 2186, Bhd. of Ry. & S.S. Clerks v. Railway Express Agency, Inc.,* 329 F.2d 748, 753 (2d Cir.1964). Neither party, however, has submitted the dispute to arbitration, and the court has no power to grant injunctive relief in a minor dispute unless the dispute is actually pending before an adjustment board. *Manion v. Kansas City Terminal Ry.,* 353 U.S. 927, 927, 77 S.Ct. 706, 706, 1 L.Ed.2d 722 (1957) (per curiam); *Westchester Lodge 2186, supra,* 329 F.2d at 753. If the plaintiffs submit the dispute to the adjustment board within a reasonable time, the court may entertain a renewed application for an injunction, *see id.,* although it is doubtful that plaintiffs can satisfy the stringent prerequisites for a minor-dispute injunction. *See International Bhd. of Teamsters v. Southwest Airlines Co.,* 875 F.2d 1129, 1136 (5th Cir.1989) (en banc) (drug-testing case does not meet prerequisites for minor-dispute injunction); *see also Brotherhood of Locomotive Engineers v. Missouri–K.–T. R.R.,* 363 U.S. 528, 534, 80 S.Ct. 1326, 1330, 4 L.Ed.2d 1379 (1960) (injunction permissible only if board decision for union would be "an empty victory"); *Local 553, supra,* 695 F.2d at 675 (injunction permissible only if board could give no "significant remedy" without it).

The plaintiffs offer no support for their contention that they will suffer irreparable harm unless the court orders the defendant to submit to arbitration. Despite their reference to "the defendant's refusal to submit the claim to arbitration," Pl.Mem.Opp. at 10, the plaintiffs allege no facts that suggest that a court order is necessary to secure Metro–North's compliance with its statutory and contractual obligation to submit to arbitration. The plaintiffs' request for costs and attorneys' fees is also without merit.

In conclusion, changes in controlling decisional law have undermined the basis of the injunction against the implementation of Metro–North's drug-testing policy. The drug-testing policy now presents a minor dispute within the meaning of the Railway Labor Act. The dispute is thus within the exclusive jurisdiction of an adjustment board.

Accordingly, the injunction entered against Metro–North in this case on August 16, 1988, is dissolved. The plaintiffs' requests for an injunction compelling arbitration and restraining implementation of the drug-testing policy pending arbitration, and for costs and attorneys' fees, are denied.

IT IS SO ORDERED.

*Rail* ... was virtually identical to the one at issue here," and concluded that the dispute arising from Metro–North's drug-testing policy was minor. *Id.* at 2317.