Patricia SHEEHAN, Plaintiff-Appellant,

v.

PUROLATOR COURIER CORPORA-
TION and Purolator, Inc.,
Defendants-Appellees.

No. 1651, Docket 81–7388.

United States Court of Appeals,
Second Circuit.

Argued Aug. 10, 1981.

Decided Aug. 10, 1981.

Opinion Feb. 22, 1982.

Judith P. Vladeck, New York City (Vladeck, Elias, Vladeck & Engelhard, P. C., New York City, on the brief), for plaintiff-appellant.

Joel L. Finger, New York City (Allen B. Roberts, Thomas C. Greble, Sloan, Roberts & Finger, New York City, on the brief), for defendants-appellees.

Sandra G. Bryan, Washington, D. C. (Constance L. DuPre, Acting Deputy Gen. Counsel, Philip B. Sklover, Acting Associate Gen. Counsel, Vincent Blackwood, Assistant Gen. Counsel, E. E. O. C., Washington, D. C., on the brief), for amicus curiae Equal Employment Opportunity Commission.

Before VAN GRAAFEILAND and KEARSE, Circuit Judges, and MARKEY,* Chief Judge.

KEARSE, Circuit Judge:

This appeal requires us to determine whether a federal court has jurisdiction to entertain an action brought by an individual plaintiff under Title VII of the Civil Rights Act · of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e to 2000e–17 (1976 and Supp. III 1979), seeking a preliminary injunction to maintain the status quo pending resolution of plaintiff's charge of discrimination, notwithstanding that the plaintiff has not yet obtained a "right to sue" letter from the Equal Employment Opportunity Commission ("EEOC" or "Commission").

Plaintiff-appellant Patricia Sheehan, a recent employee of defendant-appellee Purolator Courier Corporation ("Purolator"), sought such temporary relief in the United States District Court for the Eastern District of New York. The court, Henry

---

* Honorable Howard T. Markey, Chief Judge of the United States Court of Customs and Patent Appeals, sitting by designation.

Bramwell, *Judge*, dismissed the complaint for lack of subject matter jurisdiction, on the ground that there is no express provision for such jurisdiction in Title VII. Believing that the court has the inherent power as a court of equity to grant such temporary relief in the proper circumstances, we reverse and remand.

## BACKGROUND

The relevant facts can be stated briefly. Sheehan was hired by Purolator in 1971 and became Staff Vice-President, Administration, in 1977. On January 19, 1981, Sheehan and two other female employees filed charges with the EEOC accusing Purolator of discriminating on the basis of sex "in salary, opportunities for promotion and other terms and conditions of employment," in violation of § 703(a) of Title VII, 42 U.S.C. § 2000e–2(a).[1] According to the complaint in the present action, Purolator immediately responded to Sheehan's EEOC charges by retaliating against Sheehan and her fellow complainants in violation of § 704(a) of Title VII, 42 U.S.C. § 2000(e)–3(a),[2] subjecting Sheehan, in particular, to unprofessional, demeaning, and abusive treatment, to withdrawal of credit that remained available to other employees, and to significant loss of managerial responsibilities. On April 3, Sheehan filed a second charge of discrimination with the EEOC, complaining of the retaliation. On April 13, she commenced the present suit, claiming that the retaliation was causing irreparable harm to her health and career, and requesting a preliminary injunction to maintain the status quo pending the resolution of her EEOC complaints. When Sheehan filed suit she had not obtained a "right to sue" letter from the EEOC under Title VII § 706(f)(1), 42 U.S.C. § 2000e–5(f)(1). *See* note 6, *infra*, and surrounding text.

On May 1, in an opinion reported at 25 FEP Cases 1342, Judge Bramwell dismissed the complaint for lack of subject matter jurisdiction. Relying on *McGee v. Purolator Courier Corp.*, 430 F.Supp. 1285 (N.D. Ala.1977), and *Berg v. La Crosse Cooler Co.*, 13 FEP Cases 783 (W.D.Wis.1976), *appeal dismissed as moot*, 548 F.2d 211 (7th Cir. 1977), the court held "that the receipt of a right to sue letter by a Title VII plaintiff is a jurisdictional prerequisite to the maintenance of a federal court Title VII action." Finding no express provision in Title VII for the granting of injunctive relief prior to the issuance of a right to sue letter, the court "transpose[d] the conspicuous absence of a specific authority for preliminary injunctive relief in Title VII . . . into a holding that no such relief is available." 25 FEP Cases at 1342.

This appeal followed. Since we were satisfied that the district court had jurisdiction to grant the requested relief, and since we recognized that reconsideration of the merits of the motion should occur promptly, we announced our then-unanimous (*see* dissenting opinion of Markey, Ch.J., *post*) decision from the bench, stating that this opinion would follow.[3]

## DISCUSSION

The goal of Title VII is to eradicate employment discrimination on the basis of

---

1. Section 703(a) provides as follows:
   It shall be an unlawful employment practice for an employer—
   (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
   (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

2. Section 704(a) provides, in pertinent part, as follows:
   It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he [*sic*] has opposed any practice made an unlawful employment practice by [Title VII], or because he [*sic*] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].

3. The district court had also ruled that Sheehan had failed to prove irreparable harm. Sheehan argues on appeal that the personal indignation and the physical and psychological effects of stress constituted irreparable injury to her. In

race, color, religion, sex, or national origin. *See* H.R.Rep.No.914, 88th Cong., 1st Sess. 26 (1963), *reprinted in* [1964] U.S.Code Cong. & Ad.News 2391, 2401. Section 703(a), *see* note 1, *supra*, prohibits an employer from discriminating on any such basis in its decisions to hire, fire, compensate, promote, and so forth. 42 U.S.C. § 2000e–2(a). Section 705 established the EEOC for the purpose of investigating claims of discrimination. 42 U.S.C. § 2000e–4. And § 704(a), *see* note 2 *supra*, prohibits an employer from retaliating against an employee for having opposed a discriminatory employment practice, for having filed a charge with the EEOC, or for having participated in any way in an investigation or proceeding to review such a charge. 42 U.S.C. § 2000e–3(a).

In seeking the elimination of employment discrimination, the procedural scheme under Title VII emphasizes conciliation rather than litigation. A complainant is required, prior to bringing suit, to file a charge with the EEOC, and if the EEOC determines that there is reasonable cause to believe the complainant's charge, § 706(b) directs it to "endeavor to eliminate [the] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." [4] 42 U.S.C. § 2000e–5(b). As a general rule, litigation is postponed until "conference, conciliation, and persuasion" have failed to achieve a resolution of the charge that is satisfactory to the aggrieved person. Thus, § 706(f)(1) prohibits a private person from litigating a discrimination charge until the EEOC either has dismissed the charge or has had at least 180 days [5] to

addition both Sheehan and the EEOC, as amicus curiae, urge us to rule that employer retaliation harms the Title VII administrative process and that this administrative harm itself constitutes irreparable injury justifying injunctive relief. In light of our ruling as to jurisdiction, and in light of events following the district court's decision, we expressed no view as to the merits of Sheehan's motion. We remanded for further consideration by the district court of all the facts pertinent to Sheehan's claim of irreparable harm, including her assertion that following the dismissal of her action, Purolator had terminated her employment and, by enforcement of a covenant not to compete, sought to prevent her from obtaining comparable employment elsewhere.

4. Section 706(b), 42 U.S.C. § 2000e–5(b), provides, in relevant part, as follows:

Whenever a charge is filed by ... a person claiming to be aggrieved ... alleging that an employer ... has engaged in an unlawful employment practice, the Commission shall serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on such employer ... (hereinafter referred to as the "respondent") within ten days, and shall make an investigation thereof. Charges shall be in writing under oath or affirmation and shall contain such information as the Commission requires. Charges shall not be made public by the Commission. If the Commission determines after such investigation that there is not reasonable cause to believe that the charge is true, it shall dismiss the charge and promptly notify the person claiming to be

aggrieved and the respondent of its action. In determining whether reasonable cause exists, the Commission shall accord substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local law pursuant to the requirements of subsections (c) and (d) of this section. If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. Nothing said or done during and as a part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned. Any person who makes public information in violation of this subsection shall be fined not more than $1,000 or imprisoned for not more than one year, or both. The Commission shall make its determination on reasonable cause as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the filing of the charge or, where applicable under subsection (c) or (d) of this section, from the date upon which the Commission is authorized to take action with respect to the charge.

5. Section 706(c) of Title VII provides that, where State or local law prohibits the employment practice alleged to be unlawful under Title VII and creates an agency having authority to grant relief from such practice, a discrimination charge cannot be filed with the EEOC until

obtain voluntary compliance.[6]  42 U.S.C. § 2000e–5(f)(1).  On such dismissal or at the expiration of the prescribed period, the Commission must give notice to the aggrieved person; such notice is commonly called a "right to sue" letter.

In light of the waiting period imposed by § 706(f)(1), it is undisputed that a right to sue letter is a jurisdictional prerequisite to a suit seeking adjudication of the merits of a complainant's Title VII claim. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973).  The question presented in the instant case is whether, during the waiting period prior to the issuance of a right to sue letter, the court has jurisdiction on the application of an aggrieved person to grant a temporary injunction against employer retaliation, simply in order to maintain the status quo pending the EEOC's treatment of the complainant's charge.

Purolator contends that Title VII does not authorize such a request for preliminary relief by a private person, pointing out that § 706(f)(2), which was added to Title VII by amendment in 1972, explicitly authorizes the EEOC to "bring an action for appropriate temporary or preliminary relief" at any time, regardless of the status of any informal negotiation,[7] 42 U.S.C. § 2000e–5(f)(2), and that there is no comparable provision with respect to individuals.  We agree that neither § 706(f)(2) nor any other provision expressly gives private plaintiffs such a right.  But reading the statute as a whole, and having due regard for Congress's intent in enacting Title VII in 1964, Pub.L. No. 88–352, 78 Stat. 241 ("1964 Act") and in amending it in 1972, Pub.L. No. 92–261, 86 Stat. 103 ("1972 Amendments"), we conclude that the court is entitled to use its inherent equity power to award temporary injunctive relief, in appropriate circumstances, in order to maintain the status quo prior to the EEOC's issuance of a right to sue letter.

sixty days after proceedings have been commenced under the State or local law. 42 U.S.C. § 2000e–5(c). The 180-day period for EEOC consideration and attempted conciliation commences thereafter. New York has laws making sex discrimination in employment unlawful, Executive Law § 296(1)(a) (McKinney Supp. 1972–80); making retaliation unlawful, Executive Law § 296(1)(e) (McKinney Supp. 1972–80); and establishing a state agency with the power to grant relief, Executive Law §§ 293–95, 297–99 (McKinney 1972 and Supp. 1972–80). Since New York law is applicable to the present case, the statutory waiting period was extended by sixty days, to a total of 240 days.

6. Section 706(f)(1), 42 U.S.C. § 2000e–5(f)(1), provides, in relevant part, as follows:

If within thirty days after a charge is filed with the Commission or within thirty days after expiration of any period of reference under subsection (c) or (d) of this section [concerning State or local remedies], the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge.... The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission.... If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed

by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section ..., or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission ... shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge ... by the person claiming to be aggrieved....

7. Section 706(f)(2), 42 U.S.C. § 2000e–5(f)(2), provides, in relevant part, as follows:

Whenever a charge is filed with the Commission and the Commission concludes on the basis of a preliminary investigation that prompt judicial action is necessary to carry out the purposes of this Act, the Commission ... may bring an action for appropriate temporary or preliminary relief pending final disposition of such charge. Any temporary restraining order or other order granting preliminary or temporary relief shall be issued in accordance with rule 65 of the Federal Rules of Civil Procedure. It shall be the duty of a court having jurisdiction over proceedings under this section to assign cases for hearing at the earliest practicable date and to cause such cases to be in every way expedited.

### The Private Right of Action

The aggrieved individual's right to bring a civil action to redress a violation of Title VII was expressly created by the 1964 Act. Although early congressional bills would have given the EEOC as well a right to bring an action, the heavy emphasis on conciliation as a means of eliminating discrimination led to the exclusion of such a right on the part of the agency, and the EEOC was given no right either to order a remedy for any discrimination it found or to commence litigation to remedy discrimination. Thus, the sole right to enforce Title VII in the courts was given to the person aggrieved. The individual was required to file a charge with the EEOC before seeking substantive relief in court and to delay suit until expiration of the then-thirty-day waiting period for EEOC conciliation attempts; but he or she was not required to rely on the EEOC or to accept its resolution of the dispute.[8]

Although the 1964 Act expressly provided this private right of action by which an aggrieved individual could eventually obtain relief from discrimination, that Act made no explicit provision for temporary relief at any stage of the dispute. And although there was some discussion in the legislative history of the fact that the proposed private right of action was to be the sole method of obtaining judicial redress of an act of individual discrimination,[9] e.g., 110 Cong.Rec. 12722 (1964) (remarks of Senator Humphrey), reprinted in EEOC, Legislative History of Titles VII and XI of Civil Rights Act of 1964 ("Legislative History") at 3003–04; 110 Cong.Rec. 12819 (1964) (Senator

Dirksen's explanation of the differences between H.R. 7152, the original House bill, and the Senate substitute [see note 8 supra] ), reprinted in Legislative History at 3018, the legislative history is, like the statute, silent as to the right of an individual to obtain temporary injunctive relief pending consideration of his or her charge by the EEOC or adjudication of it by the court.

So far as we are aware, no court had occasion prior to 1972 to consider whether it had jurisdiction to enjoin employer retaliation prior to the EEOC's issuance of a right to sue letter. Perhaps this was because until 1972 the conciliation period could be as short as thirty days, a brief time compared to the 180-day period required currently.

### The 1972 Amendments

Other than lengthening the conciliation period to 180 days, the 1972 Amendments to Title VII had no impact, pertinent here, on the individual's right to bring an action to redress discrimination prohibited by Title VII.[10] Insofar as enforcement of Title VII was concerned, the amendments reflected Congress's increased awareness of the nature of employment discrimination and its realization that enforcement required a stronger government agency than the 1964 Act had provided. Thus, the House Education and Labor Committee reported,

[i]t has been the emphasis on voluntariness that has proven to be most detrimental to the successful operation of Title VII. In cases posing the most profound consequences, respondents have more often than not shrugged off the [EEOC's]

---

**8.** The bill originally passed by the House would also have restricted private litigation to cases where at least one EEOC Commissioner had given his written permission to sue. H.R. 7152, 88th Cong., 2nd Sess. § 707(c) (1964). This provision was eliminated at the instance of the Senate, 110 Cong.Rec. 14239, 14511 (1964), and the individual was given the sole power to institute a court action on the merits of the charge, subject only to the expiration of the statutory waiting period. 1964 Act § 706(e).

**9.** The Attorney General of the United States was empowered to bring an action whenever he had reasonable cause to believe there was a

pattern or practice of discrimination in violation of Title VII. 1964 Act § 707(a).

**10.** In addition to granting enforcement powers to the EEOC, the 1972 Amendments broadened Title VII's jurisdictional coverage by deleting certain exemptions for state and local governments and educational institutions, by extending some protection to federal employees, and by reducing the minimum number of employees or members required to subject employers or labor unions to Title VII. The 1972 Amendments also provided for certain administrative changes.

entreaties and relied upon the unlikelihood of the parties suing them.

* * *

H.R. 1746 [the House bill containing the 1972 Amendments] remedies the failure to include effective enforcement powers in Title VII by enacting a new section 706 ... which [gives the EEOC certain enforcement powers].

H.R.Rep.No.238, 92d Cong., 1st Sess. 9 (1971), *reprinted in* [1972] U.S.Code Cong. & Ad.News 2137, 2144–45. The Senate Labor and Public Welfare Committee reached a similar conclusion:

The most striking deficiency of the 1964 Act is that ... [it] limited the [EEOC's] enforcement authority to "informal methods of conference, conciliation and persuasion."

* * *

This failure to grant the EEOC meaningful enforcement powers has proven to be a major flaw in the operation of Title VII.

S.Rep.No.415, 92d Cong., 1st Sess. 4 (1971), [1972] U.S.Code Cong. & Ad.News at p. 2137. In consequence, the 1972 Amendments authorized the EEOC to bring an action in federal court. Revised § 706(f)(1) permitted it to seek final resolution of the discrimination charge, and § 706(f)(2) allowed it to move "for appropriate temporary or preliminary relief pending final disposition." 42 U.S.C. §§ 2000e–5(f)(1), (2).

■ Like the 1964 Act, the 1972 Amendments and their legislative history are silent as to the right of a private suitor to obtain preliminary injunctive relief. Nevertheless, two pertinent facts stand out. One is that the overall purpose of the 1972 Amendments was to expand, not to contract, the avenues of enforcement of Title VII. *See General Telephone Co. v. EEOC*, 446 U.S. 318, 325–26, 100 S.Ct. 1698, 1703, 64 L.Ed.2d 319 (1980); *Alexander v. Gardner-Denver Co., supra*, 415 U.S. at 44–45, 94 S.Ct. at 1017–18. The other is that the private right of action itself was preserved intact. Thus, the section-by-section analysis of the final version of the 1972 Amendments, prepared by Senators Javits and Williams, stated as follows:

The retention of the private right of action, as amended [by the expansion of the conciliation period from thirty to 180 days], ... is designed to make sure that the person aggrieved does not have to endure lengthy delays if the Commission ... does not act with due diligence and speed. Accordingly, the provisions ... allow the person aggrieved to elect to pursue his or her own remedy under this title in the courts where there is agency inaction, dalliance or dismissal of the charge, or unsatisfactory resolution.

It is hoped that recourse to the private lawsuit will be the exception and not the rule, and that the vast majority of complaints will be handled through the offices of the EEOC.... However, as the individual's rights to redress are paramount under the provisions of Title VII it is necessary that all avenues be left open for quick and effective relief.

118 Cong.Rec. 7168 (1972). Accordingly, as the Supreme Court has observed,

[t]he amendments did not transfer all private enforcement to the EEOC and assign to that agency exclusively the task of protecting private interests. The EEOC's civil suit was intended to supplement, not replace, the private action. Cf. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 45, 94 S.Ct. 1011, 1018, 39 L.Ed.2d 147 (1974). The EEOC was to bear the primary burden of litigation, but the private action previously available under § 706 was not superseded.

*General Telephone, supra*, 446 U.S. at 326, 100 S.Ct. at 1704.

■ Thus, whatever relief was available to a private suitor under the 1964 Act, it remained available under the 1972 Amendments.

*The Equity Powers of the Courts*

■ In normal circumstances the silence of Congress as to the details of a scheme for the enforcement of its legislation does not compel the conclusion that relief not mentioned in the statute may not be granted by

the courts. Given the traditional powers of the federal courts, a court may not rely on Congress's silence as dispositive proof that its jurisdiction is not to be exercised in a certain way. Rather, it must look to the purposes of the statute to determine whether Congress intended that it exercise its traditional powers in appropriate circumstances.

■ In general, if the court eventually will have jurisdiction of the substantive claim and an administrative tribunal has preliminary jurisdiction, the court has incidental equity jurisdiction to grant temporary relief to preserve the status quo pending the ripening of the claim for judicial action on its merits. The most notable recent case embodying this principle is the Supreme Court's decision in *FTC v. Dean Foods Co.*, 384 U.S. 597, 86 S.Ct. 1738, 16 L.Ed.2d 802 (1966). In *Dean Foods*, the Federal Trade Commission ("FTC") sought from a federal court of appeals a temporary restraining order and a preliminary injunction under the All Writs Act, 28 U.S.C. § 1651(a) (1964), to enjoin a proposed merger and maintain the status quo pending a decision by the FTC as to whether the merger would violate the antitrust laws. The Clayton Act specifically authorized the Attorney General, 15 U.S.C. § 25 (1964), or a private litigant, *id.* § 26, to seek preliminary relief against such a merger in the district court, but contained no provision for the FTC to seek preliminary relief in any court. In support of its motion the FTC stated that it would "probabl[y]" enter an order finding the merger unlawful and pointed out that the court of appeals would then have jurisdiction to review that order. The preliminary injunction, it argued, was needed to preserve the status quo in order that consummation of the merger not deprive the FTC of the opportunity to order an effective remedy nor deprive the federal appellate court of a meaningful opportunity to review the FTC's order. The court of

appeals ruled that, since there was as yet no FTC order to review, the court lacked jurisdiction to enter an injunction. The Supreme Court, with four Justices dissenting, reversed, stating as follows:

[D]ecisions of this Court "have recognized a limited judicial power to preserve the court's jurisdiction or maintain the *status quo* by injunction pending review of an agency's action through the prescribed statutory channels.... Such power has been deemed merely incidental to the courts' jurisdiction to review final agency action ...." *Arrow Transp. Co. v. Southern R. Co.*, 372 U.S. 658, 671, n.22, 83 S.Ct. 984, 991, n.22, 10 L.Ed.2d 52 (1963). There the Court cited such authority as *Scripps-Howard Radio, Inc. v. Federal Communications Comm'n*, 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229 (1942); *West India Fruit & S.S. Co. v. Seatrain Lines, Inc.*, 170 F.2d 775 (C.A. 2d Cir. 1948); and *Board of Governors v. Transamerica Corp.*, 184 F.2d 311 (C.A. 9th Cir.), cert. denied, 340 U.S. 883, 71 S.Ct. 197, 95 L.Ed. 641 (1950).

384 U.S. at 604, 86 S.Ct. at 1742. The Court noted that the Clayton Act vested the courts of appeals with the power to review final orders of the FTC remedying mergers found unlawful, and observed that

[t]his grant includes the traditional power to issue injunctions to preserve the *status quo* while administrative proceedings are in progress and prevent impairment of the effective exercise of appellate jurisdiction. *Cf. Continental Ill. Nat. Bank v. Chicago, R.I. & P.R. Co.*, 294 U.S. 648, 675, 55 S.Ct. 595, 605, 79 L.Ed. 1110 (1935).

*Id.* Applying these principles, the Court held that the court of appeals had jurisdiction, incidental to its jurisdiction to review a final FTC order, to stay the proposed merger prior to the FTC's issuance of an order.[11]

---

11. In a like vein, the Court has held that when the jurisdiction of a court of equity has been invoked, the court may, unless there is a clear statutory restriction, exercise its equity powers to the fullest. *E.g., Mitchell v. DeMario Jewel-*

ry, 361 U.S. 288, 291–92, 80 S.Ct. 332, 334–35, 4 L.Ed.2d 323 (1960); *Porter v. Warner Holding Co.*, 328 U.S. 395, 398, 66 S.Ct. 1086, 1089, 90 L.Ed. 1332 (1946) ("Unless a statute in so many words, or by a necessary and inescapable infer-

This judicial power to assume incidental equity jurisdiction with respect to a claim pending before an administrative agency had been recognized by this Court in *West India Fruit & Steamship Co. v. Seatrain Lines, Inc.*, 170 F.2d 775, 778–79 (2d Cir. 1948), *cert. dismissed*, 336 U.S. 908, 69 S.Ct. 514, 93 L.Ed. 1072 (1949), cited by the Supreme Court in *Dean Foods, supra*. *West India* involved a defendant carrier's proposed change in cargo transportation rates, which was subject to review by the United States Maritime Commission. Supported by the Maritime Commission as intervenor, the plaintiff, a competitor of the defendant, argued that unless an injunction were granted staying the changes, the agency might be rendered powerless to protect the public and private interests affected by the rate change. In affirming the district court's granting of an injunction preserving the status quo pending a decision by the Maritime Commission, we expressly rejected the defendant's argument that "the district court lacked the power to issue an injunction in aid of the [Maritime] Commission."

Similarly, in *Westchester Lodge 2186, Brotherhood of Railway & Steamship Clerks v. Railway Express Agency Inc.*, 329 F.2d 748, 752–53 (2d Cir. 1964), involving a dispute governed by the Railway Labor Act, 45 U.S.C. §§ 151–188 (1958), we held that the district court would have jurisdiction to issue a preliminary injunction in an action by a private party to preserve the status quo pending a decision by the Railroad Adjustment Board, which had exclusive primary jurisdiction to decide the merits of the dispute.

■ In the present case, applying the principles of *Dean Foods*, et al., within the framework of Title VII, we are persuaded that Congress intended the federal courts to have resort to all of their traditional equity powers, direct and incidental, in aid of the enforcement of the Title. Having stated its aim to eradicate employment discrimination, Congress made explicit statutory attempts to forestall possible efforts to frustrate the achievement of its goal. Section 704(a), for example, outlaws discrimination by an employer against any individual because he or she has opposed acts or practices made unlawful by Title VII.[12] It is noteworthy that the court is the only arbiter of the merits of a discrimination claim, and we think it plain that for the court to renounce its incidental equity jurisdiction to stay such employer retaliation pending the EEOC's consideration would frustrate Congress's purposes. Unimpeded retaliation during the now-lengthy (180-day) conciliation period is likely to diminish the EEOC's ability to achieve conciliation.[13] It is likely to have a chilling effect on the complainant's fellow employees who might otherwise desire to assert their equal rights, or to protest the employer's discriminatory acts, or to cooperate with the investigation of a discrimination charge. And in many cases

ence, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied.") Accordingly, in a Title VII case where a right to sue letter has been obtained, a preliminary injunction has been held available, notwithstanding Congress's silence as to such relief. *E.g., Culpepper v. Reynolds*, 421 F.2d 888 (5th Cir. 1970), in which the court of appeals rejected a district court's ruling that preliminary relief was not available as "too narrow a reading [of the statute] and not the 'generous' interpretation which a humane and remedial statute should receive." *Id.* at 894. The court stated that "courts are not limited to simply parroting the [1964] Act's prohibitions but are permitted, *if not required*, to order such affirmative action as may be appropriate," *id.* (emphasis in original), and concluded that "[f]ederal courts have an inherent power to grant appropriate re-

lief. . . . Absent [an] expressed prohibition the inherent power remains. There is no expressed prohibition in Title VII." *Id.*

12. Other pertinent provisions include § 703(c)(3), which makes it unlawful for a union to cause an employer to discriminate, 42 U.S.C. § 2000e–2(c)(3); and § 709(c), which requires an employer to maintain records that would furnish proof of any acts or practices of discrimination, *id.* § 2000e–8(c).

13. We recognize that an employer who will not refrain from retaliation absent a court order is perhaps an unlikely candidate for voluntary conciliation. Nevertheless, parties have been known to change their stances even though at first they appeared intractable.

the effect on the complainant of several months without work or working in humiliating or otherwise intolerable circumstances will constitute harm that cannot adequately be remedied by a later award of damages. Given the singular role in 1964 of the individual private action as the only method of enforcing Title VII, and the continued view in 1972 of that right of action as "paramount," we cannot conclude that Congress intended to preclude the courts' use of their incidental equity power in these circumstances to prevent frustration of Congress's goals.[14]

■ We are not deterred from this conclusion—which is shared by all of the courts of appeals that have decided this issue[15]

> there exist both a high probability of the claimant's ultimate success on the merits and the threat of irreparable injury of the sort which the Act seeks to avoid, a Title VII claimant may personally bring suit to maintain the status quo pending disposition by the EEOC of the underlying charge of discrimination.

528 F.2d at 1211. And in *McNail v. Amalgamated Meat Cutters & Butcher Workmen*, 549 F.2d 538, 542, n.10 (8th Cir. 1977), the Eighth Circuit agreed that the court could "assume jurisdiction absent the exhaustion of administrative remedies by the obtaining of a 'right to sue letter' from the [EEOC]."

We do not view cases such as *Gibson v. Kroger Co.*, 506 F.2d 647 (7th Cir. 1974), *cert. denied*, 421 U.S. 914, 95 S.Ct. 1571, 43 L.Ed.2d 779 (1975), *Jerome v. Viviano Food Co.*, 489 F.2d 965 (6th Cir. 1974), and *Stebbins v. Continental Ins. Cos.*, 442 F.2d 843 (D.C. Cir. 1971), as inconsistent with our conclusion here. *Gibson* and *Stebbins* were actions on the merits, where it is undisputed that a right-to-sue letter is a jurisdictional prerequisite. *Alexander, supra*, 415 U.S. at 47, 94 S.Ct. at 1019; *McDonnell Douglas, supra*, 411 U.S. at 798, 93 S.Ct. at 1822. In *Jerome* the plaintiff was not seeking an injunction to preserve the status quo, but an injunction requiring a potential employer to hire her as a new employee.

In this Circuit we have not squarely faced the issue before now, but our present course is suggested by our previous decisions. In *Faro v. New York University*, 502 F.2d 1229 (2d Cir. 1974), we affirmed a decision denying a preliminary injunction under Title VII on the grounds that " 'the plaintiff has failed to show either irreparable harm or the likelihood of success on the merits.' " *Id.* at 1230. In reaching the merits of the preliminary injunction issue, we implicitly assumed that the court had jurisdiction, though the plaintiff had not had a right to sue letter and pointed out in her brief on appeal that she could not have obtained one until nearly eight months after filing her action. Appellant's Brief at 20 & n.15. And in *Bryan v. Koch*, 627 F.2d 612, 620 (2d Cir. 1980), an action brought under Title VI of the Civil Rights Act, we contrasted Title VI and Title VII, stating that

> [t]here is a sound basis for permitting a Title VII plaintiff, in appropriate circumstances, to maintain the status quo pending an adminis-

**14.** As indicated above, we have found no basis in the 1972 Amendments for inferring any intended diminution of the individual's private right of action. Nor do we think the individual's need for an early stay of employer retaliation was eliminated in 1972 by § 706(f)(2)'s grant to the EEOC of the power to seek such a stay. The EEOC, appearing in the present case as amicus curiae, informs us that because of the volume of its work it cannot possibly seek preliminary relief on behalf of all the complainants it believes deserving.

**15.** The leading case is the Fifth Circuit's decision in *Drew v. Liberty Mutual Insurance Co.*, 480 F.2d 69 (5th Cir. 1973), *cert. denied*, 417 U.S. 935, 94 S.Ct. 2650, 41 L.Ed.2d 239 (1974). There a female employee, prior to her receipt of a right to sue letter, sought a preliminary injunction to prevent her employer from discharging her in retaliation for having filed a sex discrimination complaint. The district court dismissed for lack of jurisdiction and assessed costs against the plaintiff. Eventually the EEOC issued a right to sue letter and brought an action under § 706(f)(2) seeking preliminary relief on her behalf. On appeal from the dismissal of the employee's action the court decided that her action had been wrongly dismissed by the district court and that although she could now intervene in the EEOC action, obviating the need for continuation of her own suit, her action could not be terminated without an award to her of both costs and attorneys fees. Unlike the dissenting opinion, *post*, at note 4, we do not view the *Drew* court's discussion as dictum, since the existence of a private right to interim injunctive relief was the foundation for that court's vacation of the dismissal of the plaintiff's case and its direction that costs be awarded to the plaintiff. *Drew* was followed by the Ninth Circuit in *Berg v. Richmond Unified School District*, 528 F.2d 1208, 1211 (9th Cir. 1975), *vacated on other grounds*, 434 U.S. 158, 98 S.Ct. 623, 54 L.Ed.2d 375 (1977). In *Berg* the court of appeals noted that the plaintiff had asserted a claim under 42 U.S.C. § 1983, and that the court thus had jurisdiction under 28 U.S.C. § 1343(3). But it noted also that

> the district court had subject matter jurisdiction under Title VII itself to reach the merits of the preliminary injunction issue. In a limited class of cases such as this one, in which

—by Congress's silence on this point. Congress surely recognized that it could not spell out all of the details that would be necessary to achieve its goals. As Senators Clark and Case stated in their memorandum interpreting the House bill, H.R. 7152,

[a]n antidiscrimination law cannot be evaluated simply by an examination of its provisions, "for the letter killeth, but the spirit giveth life."

110 Cong.Rec. 7214 (1964), *reprinted in Legislative History* at 3044–45.

## CONCLUSION

■ Our holding in this case is a narrow one. In announcing our decision from the bench we expressed no opinion on the merits of Sheehan's request for immediate relief, but remanded for reconsideration under the traditional standards. In delivering this opinion, we do not alter the traditional showing that a party must make in order to persuade the court that injunctive relief is appropriate. We hold only that where a person has filed a Title VII charge with the EEOC, the court has jurisdiction to entertain a motion for temporary injunctive relief against employer retaliation while the charge is pending before the EEOC and before the EEOC has issued a right to sue letter.

Reversed and remanded.

MARKEY, Chief Judge, dissenting:

With utmost respect, I must dissent. Convinced of error and given the opportunity, I record my conversion. If judicial decision making is to be truly independent, not only of the other Branches but of other judges, considerations of personal image, public reaction, or peer evaluation, can play no part. At the same time, a decent respect for the opinion of my distinguished colleagues requires this explanation. I cannot escape the considered conviction that the holding on jurisdiction—resulting in creation of a private action for interim relief— is here unwarranted, unnecessary, and unwise; unwarranted in law in view of the congressional intent reflected in the statutory scheme; unnecessary in view of the protection provided in that scheme; unwise in view of its impact on that scheme and on the judicial system.

Sheehan presents a pity-eliciting picture of remedy-denied employees suffering discrimination, discharge, and derogation by retaliating employers for 240 days between their initial state agency complaints and receipt of right-to-sue letters. Purolator sees a scenario in which every fairly discharged employee will file a frivolous discrimination complaint with EEOC on Monday morning and a federal court action to maintain the status quo on Monday afternoon. The first script is false. The second is born of conjecture and uncertain predictions. Neither is helpful or appropriate here. If either has merit, it should be presented to the Congress, where lies the capacity and charter to modify the procedural scheme mandated in section 706 of Title VII.

On the undisputed and material facts of record, Sheehan filed with EEOC a charge of discrimination in January, 1981. Within four days of an alleged act of retaliation, she filed this private injunctive action in federal court on April 3, 1981. She stayed proceedings on her discrimination charge filed with the state of New York. She did not ask the EEOC to seek interim relief. The EEOC has not investigated her retaliation allegation or determined that prompt judicial action is necessary. Because, as the majority opinion so well states, jurisdiction is here the sole issue, the question of whether retaliation actually occurred is irrelevant.

On the law, what is certain is what Congress *did* in Title VII. It: (1) selected conciliation as the primary methodology for defeat of discrimination in the workplace; (2) authorized private actions only after a set period it deemed necessary to give conciliation a chance; (3) authorized EEOC, after investigation and when necessary, to seek injunctions against retaliation during the conciliation period; and (4) did *not* authorize a private action for interim injunc-

trative proceeding that he is obliged to initi-                    ate as a condition of his suit.

tive relief from retaliation during the conciliation period. Whether Congress *should* have authorized this last is, of course, beyond the ken of the courts.

### (1) Unwarranted in Law

The majority opinion candidly recognizes that jurisdiction cannot be here found in the statute. If jurisdiction exists, its genesis must be found in "the traditional powers of the federal courts" and the broad "purposes of the statute." Whatever may be the applicability of those sources of jurisdiction to other circumstances, I find them singularly unhelpful here.[1]

Whatever may be their "traditional powers," federal courts are courts of limited jurisdiction. Nor is there ever a presumption of jurisdiction. Federal court jurisdiction, to transfer Holmes' phrase, is not a "brooding omnipresence," there to be exercised whenever not forbidden. That the federal courts possess equity powers is today undeniable. I cannot, however, find that Congress intended the courts to *exercise* those powers in the present circumstances.[2]

As I read the statute, Congress has *not* been silent "as to the details of a scheme for the enforcement of its legislation."

Congress simply has not said, "Our purpose is to eradicate employment discrimination. For details, take this purpose to the nearest federal courthouse." On the contrary, what Congress *did* say was a specific spelling out of the details of the scheme for enforcement of Title VII outlined above.

Indeed, Congress has not been "silent" on enforcement of the specific law against retaliation involved here. In providing for injunctive relief at behest of EEOC, Congress did not mention a private right of action, but that cannot in my view be equated to a "silence of Congress as to the details of a scheme for enforcement of its legislation." In enacting § 706(f)(2), Congress, fully aware of traditional court powers, delegated the achievement of the purpose of that section to the EEOC, stating that EEOC could seek interim relief after concluding that "prompt judicial action is necessary to carry out the purposes of this Act," It cannot be within the traditional powers of the federal courts to fill every void a court may visualize in congressional legislation; but if it were, there is no void detectable in the present statute.

The powers of federal courts have been the subject of controversy since long before those courts were born.[3] On whether those powers include the power to create a pri-

---

1. That complainant has no private right of action for interim injunctive relief against discrimination itself, but is required by Congress to await completion of the 180 day conciliation period before employing the judicial process, would appear to argue against, not for, the creation of a private right of action against retaliation. Indeed, the argument based on the "traditional powers of the federal courts" and Congress' broad purpose of eradicating discrimination, and the assertion that it is needed because EEOC can't perform its statutory role, would appear to apply with equal force to the creation of a private right of action for interim injunctive relief against discrimination *before* receipt of a right-to-sue letter.

2. Denial of the private right of action here sought would accord with congressional and judicial rejection of that right in analogous labor-management contexts. *See Amalgamated Clothing Workers of America v. Richman Bros. Co.*, 348 U.S. 511, 75 S.Ct. 452, 99 L.Ed. 600 (1955) (denying interim relief under the National Labor Relations Act, which "The framers of Title VII stated that they were using . . . as a

model." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 419 n.11, 95 S.Ct. 2362, 2372, n.11, 45 L.Ed.2d 280 (1975)); *National Federation of Federal Employees v. Commandant, Defense Language Institute*, 493 F.Supp. 675 (N.D.Calif. 1980) (Federal Labor Management Relations Act); *Taylor v. Brighton Corp.*, 616 F.2d 256 (6th Cir. 1980) (Occupational Safety and Health Act); *Marchak v. Observer Publications, Inc.*, 493 F.Supp. 278 (D.R.I.1980) (Fair Labor Standards Act).

3. There was deep distrust of a federal judicial system in the Constitutional Convention. See Farrand, *The Records of the Federal Convention* (Rev.Ed.1937); Prescott, *Drafting the Federal Constitution*, ch. 17 (1941). There was concern that the federal judiciary would find that it had jurisdiction to achieve broad purposes of federal statutes. See 3 Elliott, *Debates*, 565. Early on, the Supreme Court held that the inferior federal courts received no powers directly from the Constitution, but only such authority as may be vested in them by Congress, *Turner v. Bank of North-America*, 4 Dall 7, 1 L.Ed. 718 (1799); *McIntire v. Wood*, 7

vate right of action the courts themselves have not been unanimous.[4] In *Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), the Supreme Court, unlike the majority here, declined the "intellectually neater" approach of separately treating the question of jurisdiction from that of the merits of a government employee's request for injunctive relief, *id.* at 68, 94 S.Ct. at 942. The court denied relief because the Back Pay Act precluded a finding that the discharge there complained of could constitute irreparable harm.

Whatever guidance may be gleaned from *Sampson*,[5] the Court spoke in clear terms respecting the comprehensive scheme set forth in Title VII, and the relationship of that scheme to the powers of the federal courts, in *Northwest Airlines, Inc. v. TWU*, 451 U.S. 77, 101 S.Ct. 1571 (1981). Though that case involved creation of a private action for employers claiming contribution from a union to payment of damages for discrimination, the statement of principles governing a proper judicial approach to Title VII appears equally applicable to the present creation of a private action for employees claiming retaliation:

> "In determining whether a federal statute that does not expressly provide for a particular private right of action nonetheless implicitly created that right, our task is one of statutory construction."
>
> *Id.* at 91, 101 S.Ct. at 1580.

Cranch 504, 3 L.Ed. 420 (1813); *Kendall v. United States*, 12 Pet 524, 9 L.Ed. 1181 (1838); *Cary v. Curtis*, 3 How 236, 11 L.Ed. 576 (1845), and that for jurisdiction to exist the Constitution must have given the capacity to take it and an act of Congress must have supplied it. *The Mayor v. Cooper*, 6 Wall. 247, 252, 18 L.Ed. 851 (1869).

4. *Drew v. Liberty Mutual Ins. Co.*, 480 F.2d 69 (5th Cir. 1973), *cert. denied*, 417 U.S. 935, 94 S.Ct. 2650, 41 L.Ed.2d 239 (1974) does not for me carry the weight it carries for the majority. Drew *had a right-to-sue letter* before the district court ruled on her injunction motion, and EEOC had filed under § 706(f)(2). The discussion in *Drew* of a private right to interim injunctive relief was therefore pure *dicta*. Moreover, the three pronged reasoning in *Drew* was flawed. Its analogy to *Sanders v. Dobbs Houses, Inc.*, 431 F.2d 1097 (5th Cir. 1970) fails because jurisdiction in *Sanders* rested on 42 U.S.C. § 1981, where a claimant "is not burdened with the procedural prerequisites of Title VII." *Troy v. Shell Oil Co.*, 378 F.Supp. 1042, 1047 (E.D.Mich.1974), *appeal dismissed as moot*, 519 F.2d 403 (6th Cir. 1975). The concern that EEOC was too busy is in my view a broken reed on which to hang a finding of jurisdiction. The view that the 1972 amendments to Title VII did not "repeal" a pre-existing right of private interim actions erroneously assumed the existence of such a right. The district courts of this circuit have expressed varying views: *Bridgeport Housing Authority Police Force v. Bridgeport*, 85 F.R.D. 624, 649 (D.Conn.1980); *McCarthy v. Cortland Com. Action*, 487 F.Supp. 333 (N.D.N.Y.1980). The majority's reliance on *Berg v. Richmond Unified School District*, 528 F.2d 1208 (9th Cir. 1975), and *McNail v. Amalgamated Meatcutters and Butcher Workmen*, 549 F.2d 538 (8th Cir. 1977), is misplaced. Both involved alterna-

tive bases of jurisdiction, 42 U.S.C. § 1983 and a right-to-sue letter in *Berg* and 29 U.S.C. § 411(a)(1) in *McNail*, the only reference to jurisdiction under Title VII in *McNail* appearing in a short footnote. The First and Seventh Circuits have observed that there are disparate views on whether the rationale of *Drew* comports with the congressional intent expressed in Title VII: *Hochstadt v. Worcester Foundation For Experimental Biology*, 545 F.2d 222, 226 (1st Cir. 1976); *Berg v. LaCrosse Cooler Co.*, 548 F.2d 211, 212 (7th Cir. 1977).

5. In *Sampson*, the Court distinguished *FTC v. Dean Foods Co.*, 384 U.S. 597, 86 S.Ct. 1738, 16 L.Ed.2d 802 (1966), relied on here by the majority, on the ground that exercise of court power under the All Writs Act was required in *Dean Foods* to preserve the jurisdiction of the FTC and through it the jurisdiction of the court. There is no need or basis for invoking the All Writs Act here, for there is no question that the court's jurisdiction over Sheehan's discrimination claims on the merits will be preserved, regardless of the result reached on this appeal. In *Sampson*, 415 U.S. at 78, 94 S.Ct. at 947, the Court quoted its observation in *Scripps-Howard Radio v. FCC*, 316 U.S. 4, 11, 62 S.Ct. 875, 880, 86 L.Ed. 1229 (1942), that "[t]he search for significance in the silence of Congress is too often the pursuit of a mirage," yet went on to say it was "not prepared to conclude that Congress *in this class of cases* has wholly divested the district courts of their customary authority to grant temporary injunctive relief." (Emphasis added.) *Sampson* is of interest here for its indication that availability of back pay after a determination on the merits will normally preclude a finding of irreparable harm. Title VII (42 U.S.C. § 2000e–5(g)) provides for back pay, reinstatement, and "other equitable relief as the court deems appropriate" after a final determination on the merits.

"The structure of the statutes similarly counsels against recognition of the implied right petitioner advocates in this case. The Equal Pay Act and Title VII establish comprehensive programs designed to eliminate certain varieties of employment discrimination. The statutes make express provision for private enforcement in certain carefully defined circumstances, and provide for enforcement at the instance of the Federal Government in other circumstances. The comprehensive character of the remedial scheme expressly fashioned by Congress strongly evidences an intent not to authorize additional remedies. It is, of course, not within our competence as federal judges to amend these comprehensive enforcement schemes by adding to them another private remedy not authorized by Congress." [Footnotes omitted] *Id.* at 93–94, 101 S.Ct. at 1581.

"Of course, such legislative silence is often encountered in implied right of action cases; it is to be expected that 'the legislative history of a statute that does not expressly create or deny a private remedy will typically be equally silent or ambiguous on the question.' Therefore, 'the failure of Congress expressly to consider a private remedy is not inevitably inconsistent with an intent on its part to make such a remedy available.' But unless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." [Citations omitted] *Id.* at 94, 101 S.Ct. at 1581.

"Although it is much too late to deny that there is a significant body of federal law that has been fashioned by the federal judiciary in the common-law tradition, it remains true that federal courts, unlike their state counterparts, are courts of limited jurisdiction that have not been vested with open-ended lawmaking powers." *Id.* at 95, 101 S.Ct. at 1582.

"The liability of petitioner for discriminating against its female cabin attendants is entirely a creature of federal statute.

In almost any statutory scheme, there may be a need for judicial interpretation of ambiguous or incomplete provisions. But the authority to construe a statute is fundamentally different from the authority to fashion a new rule or to provide a new remedy which Congress has not decided to adopt. The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement. Both the Equal Pay Act and Title VII of the Civil Rights Act of 1964 are such statutes. The judiciary may not, in the face of such comprehensive legislative schemes, fashion new remedies that might upset carefully considered legislative programs." [Citation and footnote omitted] *Id.* at 97, 101 S.Ct. at 1583.

In note 30, *Id.* at 97, 101 S.Ct. at 1583, the Court quoted from *National Railroad Passenger Corp. v. National Association of Railroad Passengers*, 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974): "A frequently stated principle of statutory construction is that when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies." As appears below, the expansion achieved by the majority here would subsume, indeed consume, the statutory remedy by rendering EEOC actions for interim relief under § 706(f)(2) unnecessary.

The Court did note in *Northwest Airlines* that employers are not members of the class for whose special benefit Title VII was enacted, but went on, in note 31, *Id.* 451 U.S. at 94, 101 S.Ct. at 1581, to state: "In a case in which neither the statute nor the legislative history reveals a congressional intent to create a private right of action for the benefit of the plaintiff, we need not carry the *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), inquiry further." Where, as here, Congress has not ignored or rendered impotent the intended class of beneficiaries, but has on the contrary provided a specific and fully adequate proce-

dure for its protection, no warrant would appear for interlocutory judicial intervention circumventing those procedures, in disregard of the principles set forth by the Court in *Northwest Airlines* as governing requests for judicial modification of Title VII.[6]

### (2) Unnecessary

It is undisputed that Congress provided protection of complaining employees against employer retaliation in the form of a court action by EEOC. § 706(f)(2).[7] Nothing of record establishes error in the district court's finding that § 706(f)(2) provides an "adequate legal remedy". Amicus EEOC's unsupported assertions in a brief, respecting an inability to do its job, can hardly substitute for evidence that the congressionally designed remedy is inadequate.[8] Moreover, if on a proper record the congressionally designed remedy were shown to be inadequate, it would not in my view be the proper role of the court in this case to create a new remedy of its own design. The implied private right of action here judicially created is simply unnecessary in view of the EEOC action designed by Congress in § 706(f)(2).[9]

Creation of a federal private action for interim relief is unnecessary here also in view of the clear and fully adequate state remedies available. Section 706(c) of Title VII requires the commencement of state proceedings sixty days before filing a charge with the EEOC in those states which, like New York, prohibit employment practices unlawful under Title VII.[10] Sheehan could have sought, and on proper proof obtained, immediate injunctive relief, the very relief sought here, in state court.[11] There is no evidence or even argument, nor could there be, that New York's agencies and courts are less capable, competent, or compassionate than are the federal courts in the enforcement of anti-employment discrimination laws.[12] Where a fully adequate state remedy is provided, and particularly where, as here, preliminary employment of that state remedy is mandated by Congress, it would appear both unnecessary and inappropriate for the federal judiciary to create a federal remedy supplantive of that state remedy.

**6.** Quoting from *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 17, 71 S.Ct. 534, 541, 95 L.Ed. 702 (1951), this court has warned that "[t]he jurisdiction of the federal courts is carefully guarded against expansion by judicial interpretation." *DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306, 311, *modified* 520 F.2d 409 (2d Cir. 1975).

**7.** It is bootless to cite references in the legislative history to the truism that "the individual's rights to redress are paramount." There is no question of whose rights are paramount. The question is *how* Congress intended those rights to be enforced. The obvious statement that rights to be free of discrimination reside in the discriminatee can hardly be equated with a congressional grant of jurisdiction to entertain a private right of action that by-passes the congressionally-designed scheme for enforcing those rights.

**8.** Congress was fully aware of the agency's workload in 1972. Its response was *not* to create a private right of action but to confer upon EEOC a right to seek interim relief. If events since 1972 show that Congress erred in that response, or if EEOC needs more to do its job, the problem is one for Congress, not the courts. Meanwhile, bare allegations that EEOC is overworked come with poor grace from Sheehan, who never asked EEOC to act under § 706(f)(2), and from an EEOC whose then Chair informed the Congress that EEOC had by 1979 reduced its average time to process a charge to 60 days. *Oversight Hearings on Federal Enforcement of EEOC Laws Before the Subcommittee on Employment Opportunities of the House Comm. on Education and Labor*, 96th Cong., 1st Sess. 40 (1979).

**9.** A private action is provided for in § 706(f)(1), and not in § 706(f)(2). "[W]here a statute with respect to one subject contains a specific provision, the omission of such a provision from a similar statute is significant to show a different intent existed." *Richerson v. Jones*, 551 F.2d 918, 928 (3rd Cir. 1977), quoting from *General Electric Co. v. Southern Construction Co.*, 383 F.2d 135, 138 n.4 (5th Cir. 1967).

**10.** Executive Law § 296(1)(a) (McKinney Supp. 1972–80) (sex discrimination); Executive Law § 296(1)(e) (McKinney Supp. 1072–80) (retaliation).

**11.** Executive Law § 296(9) (McKinney).

**12.** New York courts have been sensitive to claims of retaliation. *See Axel v. Duffy-Mott Co.*, 47 N.Y.2d 1, 416 N.Y.S.2d 554, 389 N.E.2d 1075 (1979).

### (3) Unwise

The wisdom informing the policy of creating a private action, whether the creator be legislature or court, is, of course, an irrelevant consideration in the courtroom. Policy considerations are implicated, however, in those portions of the majority opinion emphasizing a perceived necessity of creating such an action to effectuate "the purposes of the statute." In my view, the holding that the district court has jurisdiction to entertain a private action for interim injunctive relief against retaliation is unwise because it works against, not toward, the purposes of the statute.[13]

As above indicated, the comprehensive scheme set forth in Title VII envisions a series of steps: (1) An employee believing himself a victim of discrimination must first file a charge, with his state agency when such agency is available, directly with the EEOC when a state agency is not available; (2) An employee must give conciliation by an available state agency 60 days to work before filing with the EEOC; (3) The EEOC has 180 days in which to make conciliation work; (4) If the EEOC finds no basis for the charge or otherwise declines action, the employee receives a "right-to-sue" letter;[14] (5) If EEOC does nothing after 180 days, the employee may sue; (6) If the employee believes himself the victim of retaliation, he notifies the EEOC; (7) The EEOC will *investigate* the charge of retaliation; (8) If, after its investigation, the EEOC determines that prompt judicial action is *necessary* "to carry out the purposes of this Act," it may file an action for interim injunctive relief.

The holding here that the district court has jurisdiction, by-passes all of the administrative procedures intended by Congress to be employed in dealing with retaliation. It dilutes, if it does not obviate the statutorily required conciliation effort. It enables Sheehan and all employed residents of New York to circumvent all administrative and court proceedings established by that state for dealing with retaliation. It renders redundant the congressionally designed procedure for EEOC action against retaliation. Enabling the individual to do what Congress said the EEOC must not do, it confronts the federal courts with non-investigated charges of retaliation and situations in which EEOC has not determined that prompt judicial action is necessary. It burdens busy district courts with cases in which those courts are not only denied the experienced evaluation of EEOC but with cases in which EEOC may have investigated and found that prompt judicial relief was *not* necessary. In sum, the holding here undermines in my view the entire congressional plan for measured, conciliatory steps.

Far from serving the "spirit" of Title VII, the present holding would appear in direct contradiction of the congressional intent and purpose expressed in the legislative history:

"It is hoped that recourse to the private lawsuit will be the exception and not the rule, and that the vast majority of complaints will be handled through the offices of the EEOC or the Attorney General, as appropriate." 118 Cong.Rec. 7168 (1972).

---

13. In my view, the district court's inherent equitable power, though doubtless existing, does not encompass jurisdiction to grant Sheehan's request for injunctive relief, in the face of the congressional intent reflected in the language, structure and history of § 706. That specific statutory intent overrides general equitable principles. *See Arrow Transportation Co. v. Southern Railway Co.*, 372 U.S. 658, 667–669, 83 S.Ct. 984, 988–90, 10 L.Ed.2d 52 (1963). Similarly, that the court has subject matter jurisdiction does not end the inquiry. *FTC v. Standard Oil of California*, 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980).

14. It is settled that the courts have no jurisdiction to entertain an employee's suit on the merits of the basic charge until the employee has his right-to-sue letter. *See, e.g., General Telephone Co. v. EEOC*, 446 U.S. 318, 326, 100 S.Ct. 1698, 1704, 64 L.Ed.2d 319 (1980); *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 104–05 n.12, 99 S.Ct. 1601, 1610, 60 L.Ed.2d 66 (1979); *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 458, 95 S.Ct. 1716, 1719, 44 L.Ed.2d 295 (1975); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973).

"However, in those cases where the need for preliminary relief is serious—including but in no way limited to situations where aggrieved persons are transferred, fired, or otherwise harassed for bringing other charges before the Commission— the Commission is expected to act swiftly in issuing a complaint so that the person aggrieved will not be harmed by a delay between the time his charge is filed and the issuance of the complaint by the Commission." S.Rep.No.415, 92d Cong. 1st Sess. (1971) at 21, 22.

Thus Congress was fully alert to the potential need for preliminary relief against retaliation. In providing for necessary suits by EEOC only after investigation, it preserved its expressed purpose and intent that private lawsuits should be the "exception." The present holding defeats that intention.[15]

In attempting to protect Congress' broad purpose against what it views as an obstacle, the majority appears to have disregarded that portion of Congress' action relating to the impact of Title VII on the judicial system. A Congress frequently criticized for vastly increasing the jurisdiction of the courts, with insufficient concern for the impact of its legislation on those institutions, has here supplied a buffer against improvidently or merely strategically filed private actions, requiring that actions for interim relief against retaliation be filed by EEOC and limiting even those actions to those found necessary after an investigation.[16]

To defeat a laudable congressional solicitation for the crowded dockets of the courts, by creating an unwarranted and unnecessary private action, is at best unwise.[17]

I would affirm the district court's judgment dismissing the action for lack of jurisdiction.

---

15. Congress carefully differentiated between the rights to enforce accorded EEOC and those granted private parties. See, e.g., section 706(b) (authorizing an individual or a Commissioner to file a charge); section 706(f)(1)(authorizing the EEOC and persons aggrieved to intervene in suits filed by the other—but limiting the EEOC's power to do so); section 706(f)(1) (permitting an individual plaintiff, but not the EEOC, to commence an action without payment of costs, fees or security; section 706(k) (permitting parties, but not the EEOC, to recover costs and attorney's fees). Congress' election not to specify a private cause of action in enacting section 706(f)(2)'s grant of jurisdiction cannot be said to have been inadvertent.

16. In refusing to create a private right of action to enforce the no-retaliation provision of the

Occupational Safety and Health Act in *Taylor v. Brighton Corp.*, 616 F.2d at 262, the court employed language fully applicable here:

[It is] unlikely that Congress, having deliberately interposed the Secretary's investigation as a screening mechanism between complaining employees and the district courts, intended to permit those employees whose claims are screened out to file individual actions in those same courts.

17. The harm is done on creation of the private right of action. The holding here cannot but add to the Niagra of litigation inundating the courts. That it may be impossible, as it was here, to establish irreparable harm, does not free the courts of the need for discovery rulings, motions, hearings and the entire panoply of litigation steps leading to that determination.